# CHARLESTON.

## Curtis v. Borland.

Submitted January 26, 1891.—Decided March 14, 1891.

1. SALES—TAX-SALE—PRINCIPAL AND AGENT.

   A purchase of land at a delinquent sale by the agent or attorney of the owner, in whom he had confided, and whose duty it was to purchase in said land for the owner, operates only as a payment of the taxes, and such purchaser acquires no rights, as against the owner of the land, by neglecting his duty to the owner and buying the same for himself.

2. SALES—TAX-SALE—PARTIES—TITLE.

   In a suit brought to enforce a judgment-lien against a tract of land, a party who presents a petition, and is made defendant, claiming an equitable title to a portion of the land by reason of his purchase thereof at a sale made by the sheriff for non-payment of taxes, stating that he has not yet obtained a deed therefor, will not be protected by the last clause of section 25 of chapter 130 of the Acts of 1882, as to irregularities and defective performance of the duties by the sheriff with reference to said sale, to the same extent as he would if he had obtained a deed for said land before he became a party to said litigation.

*J. B. Jackson* for appellant.

*A. M. Campbell* and *J. A. Hutchinson* for appellees cited 18 W. Va. 759; Acts 1882, c. 31; Id., c. 130, §§ 17, 18, 31; 15 Am. Dec. 681, n., 690.

English, Judge :

This was a suit in equity, brought in the Circuit Court of Pleasants county by William F. Curtis, Jr., against Charles Borland and others for the purpose of enforcing a judgment-lien for one hundred dollars, with interest from the 12th day of April, 1886, and one dollar and fifty cents costs, against one hundred and ninety acres of land situated in said county, owned by said Charles Borland.

The plaintiff alleges in his bill that L. N. Tavener had a lien on one hundred and fifty acres of said land by reason of a deed of trust executed by said Borland to George

Loomis, trustee, dated the 22d day of August, 1884, to secure two negotiable notes—one for four hundred dollars, and the other for four hundred and twenty two dollars; that said tract of land, in the conveyance to said Charles Borland by the Virginia Petroleum Company, dated June 27, 1873, a certified copy of which is exhibited with said bill, was described as two tracts—one containing one hundred and fifty acres, and the other forty acres; that there were other liens on said lands, which he is unable to ascertain; and he prays a reference to a commissioner to ascertain and report the lands owned by the defendant Borland and the liens thereon, with their priorities; and praying that the said forty acres of land might be decreed to be sold to enforce the payment of the plaintiff's lien and the other liens against said land, and the costs of the suit, and for general relief.

On the 13th day of October, 1886, an account was directed to be taken by one of the commissioners of the court to ascertain and report the amount of real estate owned by the defendant Borland, the liens existing against the same, and their priorities, whether said lands would rent for sufficient in five years to pay off and discharge the liens thereon, with costs of suit etc.

On the 14th day of March, 1887, J. L. Knight commissioner, returned his report, wherein he states that, after giving the notice required by said decree and notice to lienholder, he proceeded to take said account, and found that the said Charles Borland, at the date of the rendition of plaintiff's judgment, to wit, on the 12th day of April, 1886, was the owner in fee of two tracts of land containing one hundred and fifty and forty acres, respectively, situate on the waters of Bull creek, in Pleasants county; that the said two tracts of land were charged as a whole, and entered on the land-books of Pleasants county in the name of Charles Borland as one hundred and ninety acres; —that liens existing against said land at the date of said referrence are placed by him in order of priority as follows: (1) A deed of trust, executed by said Charles Borland on the one hundred and fifty-acre tract aforesaid to George

Loomis, trustee, dated the 22d day of August, 1884, and recorded, to secure two negotiable notes bearing even date with said deed—one for four hundred dollars payable at the Citizens' National Bank of Parkersburg, and due in one year with interest from date; the other for four hundred and twenty two dollars and twenty five cents with interest, payable in two years after date at said national bank—both of said notes being payable to the order of Eliza J. Hesht. (2) A judgment, rendered by J. T. Barron, a justice of the peace of said county, in favor of the plaintiff, William Curtis, Jr., for the sum of one hundred dollars with interest from the 27th day of January, 1886, and one dollar and fifty cents costs, which judgment was docketed, and a lien on all the real estate of Charles Borland, and was second in point of priority. (3) A judgment in favor of Joseph Bookman against the said Charles Borland, dated 31st of January, 1887, for the sum of eleven dollars and ten cents with interest from date of judgment, and two dollars and twenty five cents costs. Said commissioner also reported that said George Loomis, trustee in the deed of trust aforesaid, had since the entering of the order of reference advertised and sold the one hundred and fifty-acre tract of land under said trust, and that L. N. Tavener became the purchaser thereof for seven hundred and fifty dollars and that said trustee had executed a deed to said L. N. Tavener for said one hundred and fifty-acre tract of land, dated the 10th day of December, 1886, and it had been recorded, and that the price for which said one hundred and fifty acres were sold was insufficient to pay off and discharge the amount of the two notes which said trust was given to secure, by reason of which all subsequent liens against said one hundred and fifty acre tract were extinguished.

Said commissioner further reports that the said one hundred and ninety acres, composed of the one hundred and fifty and forty acres, were sold by the sheriff of said county at a delinquent land sale on the 21st day of January, 1886, (but it is shown by the report of the sheriff, which was filed by agreement, to have been on the 11th day of January, 1886) for the taxes due thereon for the year 1884, at which

sale Robert Patterson became the purchaser; that the time has expired in which said tracts of land could have been redeemed, but that he was informed and believes that the said one hundred and fifty-acre tract had been redeemed, in support of which he filed the petition of R. Patterson, which was filed before him on the 2d of February, 1887. Said commissioner also reports that said R. Patterson filed with him the sheriff's receipt for the purchase of said land, which receipt is made an exhibit with said report, from which receipt it appears that the quantity of land sold was one hundred and ninety acres, and that Robert Patterson was the purchaser, and the amount of purchase-money paid was thirty one dollars and eighty nine cents.

In the petition of said Robert Patterson filed, and which is made an exhibit with said report, he claims that he purchased of D. W. Reynolds, sheriff of Pleasants county, W. Va., one hundred and ninety acres of delinquent land situate in said county on the waters of Bull creek, which had been returned delinquent in the name of Charles Borland for the year 1884, said sale of delinquent lands being made by said sheriff on the 11th day of January, 1886, and that L. N. Tavener had redeemed one hundred and fifty acres, part thereof, from him, but that the remaining forty acres had not been redeemed; and petitioner claimed the right to the legal title thereof, and prayed that the legal title to said forty acres might be decreed him; and on his motion he was made a party defendant in said suit, and leave was granted said Charles Borland to file a cross-bill in said suit, which was accordingly done. In said cross-bill the said Borland sets forth the fact that the plaintiff had filed the bill in this cause to enforce his judgment-lien against both of said tracts, and the filing of said petition by Robert Patterson, reciting the facts set forth therein and relied upon, and charged that said one hundred and ninety acres of land was improperly assessed and charged against him, and was illegally sold, and no legal and proper return had been made; that said report was not made in thirty days from and after the day of sale, as required by law; that said land was sold as an entire tract, whereas he did not own an entire tract of one hundred and ninety

acres of land; and that all the proceedings in regard to said sale were illegal and void; and further, that said Patterson at and before said sale represented that he was buying the said land, and did in fact buy the same, for him (the said Borland) and on his account, and as his agent and attorney in that behalf; and that he told the clerk of the County Court of said county, John L. Knight, that he was buying in said land for said Borland; and that in purchasing said land he did so as the agent and attorney of him, the said Borland; and that he confided in said Patterson to make said purchase for him, and not defraud him by setting up a claim of title to said land under said purchase; that on the 14th day of March he caused a tender to be made to said Patterson of fifteen dollars in gold for the purpose of redeeming said forty acres, and for his trouble in and about the purchase of the same for him, but that said Patterson refused to accept said money, and now insists on having a deed made to him absolutely, in disregard of his duty and the rights of him, the said Borland; and he prayed that said Patterson might be enjoined from procuring a deed for said forty acres of land, and that said tax-sale might be decreed void, and set aside.

The defendant, Patterson, answered said cross-bill, putting in issue all of its material allegations.

On the first Monday in February, 1889, the plaintiff, William F. Curtis, filed an amended bill, reciting the allegations contained in his original bill, and, by way of amendment, the sale by George Loomis, trustee, of said one hundred and fifty acres, leaving the forty acres, upon which he must rely for the payment of his judgment, charging that he, R. Patterson, was the agent and attorney of said Charles Borland and in his employ, at a sale of delinquent lands made by said sheriff of Pleasants county on the 11th day of January, 1886, purchased both of said tracts of land in his own name and for his own use, and had procured a deed to be made to him since the institution of this suit, and since the filing of his petition therein, and since the filing of said cross-bill by said Borland for said forty-acre tract of land; and also charging that said purchase of said lands by the said R. Patterson in his own name and for his benefit

was fraudulent and void, and that the deed obtained under and by virtue of said purchase was a fraud upon plaintiff's rights, and should be set aside, and held for naught; that said R. Patterson well knew the facts set out in said cross-bill filed in this suit by Charles Borland at the time he made said purchase. He refers to the allegations contained in said cross-bill, and asks that he may have the benefit of the evidence taken in this suit thereunder, and that said purchase made by said Patterson, and the deed made thereunder, may be set aside and annulled, and his judgment-liens may be enforced against said forty acres of land, and that general relief may be granted him.

The defendant, R. Patterson, demurred to the substituted and amended bills of W. F. Curtis, Jr., the plaintiff, first, because there was no prayer in said bill that L. N. Tavener or the said George Loomis, trustee, be made defendants to said bill, and because they were not served with process in said suit; and neither of them answered the bill, although the bill of complaint shows that they were interested parties to said suit and because neither of said bills shows the plaintiff entitled to any relief from the court. The defendant, Patterson, also filed several exceptions to the report of Commissioner Knight, and filed an answer to the plaintiff's amended bill, putting in issue the material allegations thereof, and charging as affirmative matter that on the 11th day of January, 1886, D. W. Reynolds, then sheriff of Pleasants county, sold the one hundred and ninety acres of land before mentioned for the non-payment of taxes thereon for the year 1884, and that he became the purchaser at said sale for the sum of thirty one dollars and eighty four cents, as shown by the receipt of said sheriff, which he exhibited; that said W. F. Curtis, Jr., and Charles Borland both knew that he had made said purchase, and said Borland was notified on two occasions to redeem said land before the 13th day of January, 1887, the date on which the year expired in which said one hundred and ninety acres of land could be redeemed, but that neither of them made any effort to redeem the said land until after said year had expired (except as to the employment of Aug. M. Campbell and S. S. Knowles, attorneys, to look after

this matter); that in the month of December, 1886, L. N. Tavener redeemed for Charles Borland one hundred and fifty acres of said one hundred and ninety acres, for the purpose of protecting the title to that part of said land to Charles Borland, said Borland not being able to do so, being wholly insolvent; and, George Loomis having sold said one hundred and fifty acres of land under the trust-deed after the institution of this suit by the plaintiff, it was the duty of the plaintiff to proceed in this cause against the whole one hundred and ninety acres, and not as the plaintiff is now attempting to do by his amended bill; that on the 27th day of January, 1887, he had the county-surveyor to survey and plat said forty-acre tract as well as said one hundred and fifty-acre tract, and to return a report thereof is required by law, and the clerk executed to him a deed for said forty-acre tract, which facts he set up in his petition filed with said commissioner; and that plaintiff was fully aware that said one hundred and fifty-acre tract had been wholly sacrificed by the sale made by said trustee without the order of the court; and that, if said Loomis and Tavener had been required by plaintiff to answer said original bill, and show themselves entitled to a decree for the sale of said one hundred and fifty acres of land, it would have sold for more than would have paid off and satisfied said trust-debt and the judgment of plaintiff and costs; that plaintiff's remedy is to require said Tavener and Loomis, trustee, to answer said bill, and to ask the court to set aside the sale so made by said trustee, Loomis, and to ask that said one hundred and fifty acres be decreed to be sold to pay said debt, when said report is duly authenticated; that the plaintiff has no right to call in question the right of defendant to said forty acres of land, until he has pursued his remedy against the said one hundred and fifty-acre tract so redeemed for Charles Borland, and so illegally sold by said Loomis, trustee, and purchased by said Tavener; that said Eliza J. Hesht should be made a defendant in this suit, and an order of reference should be made in the cause, or the original report made in the cause should be duly authenticated, and the plaintiff be required to authenticate the papers filed by him as copies of his original bill.

It seems that a portion of the original papers were lost for a time, but they were subsequently found and appear in the record.

The defendant further alleges and charges that the parties aforesaid are in contempt of court, and prosecuting defendant unlawfully and contrary to equity and fair dealing in this; that the plaintiff, having brought his suit in September, 1886, had process duly served on the defendant, a decree entered and confirmed, the cause set for hearing and heard and referred to a commissioner, but before the commissioner made and filed his report said Loomis, trustee, advertised and sold said one hundred and fifty-acre tract of land to the other defendant, L. N. Tavener, for seven hundred dollars or seven hundred and fifty dollars, without any order of court, in which the right to sell said land and distribute proceeds had been reported on, which was to be reported on, this being known to them at the time of the sale made by said trustee; and the plaintiff failed to protect himself from such fraudulent sale by calling the attention of the court to the contempt aforesaid, and having said sale set aside; and said defendant claims the right to call attention to these facts, and asks that the plaintiff be required to proceed under his original bill; that the court will set aside the sale of said one hundred and fifty acre-tract made by said trustee, Loomis, and that it may be sold under a decree of the court to satisfy said trust-debt and the plaintiff's judgment, which are proper liens thereon; and that the cause be recommitted to said commissioner, Knight, to make a report of the matters referred to him by decree in the original cause, or to make an authenticated copy of the original report, if properly made; and that the defendants, Charles Borland, L. N. Tavener, George Loomis, trustee, and the plaintiff, William F. Curtis, Jr., be required to answer the allegations and charges therein set up in the affirmative matters in said answer under oath as defendant therein; that the sale made by said trustee of said one hundred and fifty acres of land may be set aside and held for naught; and that L. N. Tavener be required to reconvey said one hundred and fifty acres of land to said trustee, without warranty; and that

the court will decree that the deed to defendant conveying said thirty seven and one half acres of land aforesaid is a valid deed *etc.*

Quite a number of depositions were taken by the plaintiff and defendant in the cause, and on the 10th of June, 1890, a decree was rendered therein, in which it was held that the plaintiff and the plaintiff in the cross-bill were entitled to the relief prayed for, dismissing the bill as to L. N. Tavener, Eliza J. Hesht, and George Loomis, trustee, and holding that the sale of said land made by the sheriff at the tax-sale on the 11th day January, 1886, was not returned to the clerk's office within the time required by law, and that said sale and the deed made in pursuance thereof were not valid; and that the said Robert Patterson held such a confidential relation to the owner, Charles Borland, as would render it improper to maintain said sale against said owner, and set aside the deed made by said clerk to said Patterson, overruled the exceptions of said Patterson to said supplemental report, and confirmed the original report, ascertained the liens and their priorities, gave costs to Charles Borland upon said cross-bill, and directed that, unless said liens and costs be paid in thirty days from the rising of the court, a special commissioner therein appointed should advertise and sell said forty-acre tract of land at the place and upon the terms therein prescribed after giving bond in the penalty of one thousand dollars. From this decree this appeal was obtained by the defendant Patterson.

The first question to be met and considered in this case is whether said Robert Patterson was entitled to be made a party defendant in this suit. Do the pleadings and facts disclosed in the cause show that he has such interest in the subject-matter of the suit, as would authorize him to ask for and obtain the affirmative relief prayed for in his answer to the amended bill? The solution of this question depends entirely upon whether by reason of the sale of lands made by D. W. Reynolds, sheriff of Pleasants county, on the 11th day of January, 1886, for the non-payment of taxes thereon for the years 1883 and 1884, said Robert Patterson acquired any title to the one

hundred and ninety acres of land then offered for sale by said sheriff as the property of Charles Borland.

In the petition filed by the said Robert Patterson in the cause, praying that he may be made defendant, he relies for his *locus standi* in the case upon the alleged fact that at the sale of said one hundred and ninety-acre tract of land by said sheriff on the 11th day of January, 1886, he became the purchaser thereof, and that, although L. N. Tavener had redeemed one hundred and fifty acres—a part thereof—he was entitled to a deed for the remaining forty acres, to which he then claimed an equitable title, and exhibited said sheriff's certificate and receipt for the purchase-money for said one hundred and ninety-acre tract of land.

Charles Borland, in the cross-bill filed by him, charges that said one hundred and ninety acres of land were illegaly sold, and no legal and proper return was made, as shown by the face of the record and proceedings on file in the County Court of Pleasants county; that said return was not made within thirty days from and after the day of sale, as required by law; and that said land was sold as an entire tract.

It appears from the return of said sales made by the sheriff of Pleasants county and his affidavit appended thereto that both the lands sold to individuals and those sold to the State were sold on the 11th day of February, 1886. Said Sheriff's affidavit appears to have been made on that day, and the clerk certifies that the above list of delinquent sales was returned to the clerk's office by the sheriff on the 11th day of February, 1887, which was not within thirty days after the completion of such sale, as required by c. 130, s. 14, of the Acts of 1882.

In the case of Jackson v. Kittle, 34 W. Va., 207, it appeared that the affidavit which the statute required the sheriff to append to his return of sales of delinquent lands was not in conformity with the statute, which sale was made on the 27th day of November, 1887, and it was held in the second point of the syllabus that "the law requires the sheriff to append to his return of sales of delinquent lands a prescribed affidavit. If he omit to do so, or omit from such affidavit a material or substantial portion of it as so prescribed, the clerk should not make the purchaser a deed;

and, if the objection is interposed before the deed is made, the sale should be set aside." In that case the court draws a distinction as to the effect of omissions and irregularities in the proceedings and returns of such sales upon a party holding the equitable title acquired by a purchase at such sale and one who had already obtained his deed; and we find the following language in the opinion of the court:

"Now, the legislature must be presumed to have known the law when they passed the curative act of 1882, which we are now considering (see Acts 1882, c. 130, § 25); and the fact that they expressly limit its remedial efficacy to the period after the purchaser shall have obtained his deed renders it certain that they did not mean to prevent the owner from availing himself of these errors and irregularities as against the equitable title of the purchaser before his deed is obtained. * * * I have not overlooked the very comprehensive clause with which section 25, c. 31, of the Code, concludes, which is as follows: 'But no sale or deed of any such real estate under the provision of this chapter shall be set aside or in any manner affected by the reason of the failure of any officer mentioned in this chapter to do or perform any act or duty herein required to be done or performed by him after such sale is made, or by illegal or defective performance or attempt at the performance of any such act or duty after such sale, or by reason of the conveyance by the deed hereinbefore mentioned and prescribed of a less quantity of real estate than that mentioned in the lists of sales made out and returned as provided in the 12th, 13th, and 14th sections of this chapter, if the real estate so conveyed by such deed be in fact the same which was sold as delinquent.' If this concluding paragraph is to be given the force of a sweeping indemnity against all defects in the return of the officer making the sale, then the preceding paragraph which I have quoted would be entirely useless or repugnant. Such a construction will be avoided if possible. Conflict and repugnance in statutes should always be avoided by construction if possible. Indeed, a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word should be superfluous, void, or insignificant."

In the case under consideration the defendant, Robert Patterson, filed his petition on the 14th day of March, 1887, in which he alleged that he had an equitable title to the forty acres of land which had not been redeemed, and had a right to the legal title to the same. At this time he was made a party defendant in the cause, and his petition was treated as an answer to the plaintiff's bill; and the deed from the clerk for said tract, which surveyed thirty seven and a half acres, was not made to him until the 11th day of June, 1887, the cross-bill of Charles Borland having been filed on the 9th day of April, 1887, in which he charged that said land was illegally sold, and no legal or proper return was made, as shown by the face of the record on file in the clerk's office of Pleasants county; and prayed that said Robert Patterson might be enjoined and restrained from procuring a deed for said forty acres, so that the deed made by said clerk to said Patterson was executed subsequently, to the *lis mota.*

It is just as important and imperative that the list and certificate of oath attached shall be returned within thirty days after the completion of such sale as it is that the proper affidavit should be made, for how could it be known whether the proper affidavit had been made or not, if it is not returned to the office? And to show that the legislature had a purpose in requiring its return it is provided that the clerk shall within twenty days thereafter record the same in a well-bound book, and transmit the original to the auditor; and it is further provided that such sheriff may, upon the petition of any person interested, be compelled by *mandamas* to make out and return such list *etc.* Parties interested are presumed to be acquainted with the law requiring the return of said report and affidavit within thirty days; and, if no such return is made within said time to the clerk's office, they might well presume that no sale had been made, and thus be deprived of the privilege of redeeming their land within the time prescribed by law. In construing the last clause of said section 25, above quoted, we must regard it as applying to cases in which a deed already made by a clerk under the statute, in pursuance of a sale made by the sheriff for the non-payment of taxes, is

sought to be impeached for irregularities in the proceedings anterior to such conveyance, and not, as in this case, where the party at the time the litigation commenced was only claiming an equitable title.

Again, in the case of *Williamson* v. *Russell*, 18 W. Va. 613, this Court held in the fourth point of the syllabus: "A purchase at a sale of land for delinquent taxes by one whose duty it was to have paid the taxes operates only as a payment of the taxes, and the purchaser can acquire no rights as against the owner of the land by the neglect of his duty to the owner." Charles Borland, when asked, "State if you had any arrangement with Robert Patterson about the purchase of said lands by him before the purchase thereof," answered, "I had;" and when asked what those arrangements were, and where and when made, and "all you know about it," answered. "The arrangement was made at St. Mary's a few days before the sale. Some time before that I had consulted Mr. Patterson as to the validity of tax-titles. He told me he had no doubt but what the state courts would sustain tax-titles. I had a reason for desiring a tax-title upon these lands. I therefore got Mr. Patterson to attend the sale and bid the lands off. My contract with him was that I would allow him legal interest upon the amount, and pay him five dollars as an attorney's fee." In answer to another question he says: "I relied upon him as an agent, the position the contract placed him in." It is true that Robert Patterson contradicts him, but admits having a conversation with him, in which, at said Borland's request, he agreed to buy the land in not for Borland, but for himself, and that Borland was not to pay him any fee for so doing. While it is true that several witnesses called by said Patterson stated that said Borland's reputation for truth and veracity was bad, yet D. W. Reynolds, the sheriff who made said sale, when asked: "Do you know for whom R. Patterson bought in a tract of one hundred and ninety acres of land sold in the name of Charles Borland at the sale made by you as sheriff of Pleasants county on the 11th day of January, 1886?" answered: "I would not be positive as to that, he bought it for Judge Borland; by some conversation I had that he had bought or was buying it in

CURTIS v. BORLAND. 137

for Judge Borland, by some arrangement made by him." In answer to another question he says: "I am not positive whether it was Mr. Patterson or Knight told me that he, Mr. Patterson, was buying this land in for Judge Borland by some arrangement made by Judge Borland with Capt. Patterson. I am not positive whether it was before or after the sale. The conversation was in my presence." Then J. L. Knight states that he was present at the sale on the 11th day of January, 1886, and, when asked why he did not bid in said tract of land, answered: "Robert Patterson and I had a conversation on the morning of the 11th day of January, 1886, in reference to buying some lands in partnership, and in that conversation he remarked that he would go partners with me in purchasing any lands that I might purchase except the Charles Borland tract; that he wanted to bid in that tract, and either said he would get five dollars for so doing, or that he would charge five dollars for doing it, or words to that effect." The evidence, then, of the sheriff, D. W. Reynolds, and J. L. Knight, as it seems to me, confirms the statement of Borland that said Patterson was to buy it in for him and receive five dollars for so doing, and contradicts the evidence of Patterson, who states that he made no agreement with said Borland as to said purchase; for why should said Patterson tell Knight that he would get five dollars or that he would charge five dollars for bidding in the land if he was buying it in for himself?

In the notes to the case of *Blake* v. *Howe*, 15 Am. Dec. 684, under the head of "Who may purchase at tax-sale," we find it is said that "it is a universal principle that one who ought to pay the taxes on property can not, by omitting to do so, purchase at a sale of the property for the non-payment, and thereby strengthen his title. A purchase by one, whose duty it was to pay the taxes, operates as payment only. He can derive no benefit as against a third party by the neglect of the duty he owed to such party."

In the case of *Coxe* v. *Wolcott*, 27 Pa. St. 154, it was held: "A party is bound by agreement with the owner of the land to pay the taxes for which it is sold, would not be permitted, even after the two years, to defeat, the title of the owner by purchasing it back at the price of a redemption."

In the case of *Oldhams* v. *Jones*, 5 B. Mon. 467, it was held that an agent appointed in Kentucky to pay taxes on the lands of non-residents, who suffered the same to be sold for a small price, and bought it himself, purchased in trust for the benefit of the owners.

In the case of *Piatt* v. *St. Clair's Heirs*, 6 Ohio, 227, it was held : "Where the heir is bound to pay the taxes, and suffers them to accumulate, and the lands to be sold, becomes himself the purchaser, and has them conveyed to his guardian or to another in trust, the estate, as to creditors of the deceased, is not changed."

From these decisions and the facts proven in the case we conclude that the defendant, Patterson, by his purchase at said sale acquired no title, either legal or equitable, to said tract of land. The demurrer filed by the defendant, Patterson, was properly overruled.

Section 37 of chapter 125 of the Code provides that "every person designated in the caption of such bill as a defendant shall be a defendant therein, without a prayer that he be made such, and shall be required to answer the bill in the same manner and to the same extent as if he were therein called upon to do so." The cause of demurrer assigned was that there was no prayer that L. N. Tavener and George Loomis, trustee, be made defendants. They were however, named as defendants in the caption, and this complies with the requirements of the statute. The exceptions to Commissioner Knight's supplemental report were properly overruled. Said exceptions were filed to the supplied report, and do not apply to the original report, which was found and restored when the original papers were found, and there was no exception to said original report.

For the reasons hereinbefore stated, and guided by the law which is applicable to the facts proven in this case, my conclusion is that the decree complained of must be affirmed, with costs and damages to the appellee.

Affirmed.