# CHARLESTON

·FRUM v. FOX.

Submitted September 15, 1905.    Decided November 21, 1905.

1. EQUITY—*Bill*—*Multifariousness*.

A bill by the heirs of a deceased person against a purchaser of the decedent's real estate at a sale thereof for non-payment of taxes, to set aside the deed, acquired under such purchase, and to declare the dower of the widow of such decedent in the same land barred, is multifarious.  (p. 339:)

2. TAXATION—*Redemption*—*Agreement by Parties*.

A purchaser at a tax sale of an entire tract of land, owned in separate parcels by himself and two others, one of whom, at the time of the purchase, contributes for the purpose thereof more money than the proportion which his share of the land bears to the whole tract, with the understanding and agreement that, as to the parts owned by the purchaser and the party so contributing, the purchase shall operate as a redemption, acquires no title to the land owned by the party so contributing, as against him.  (p. 337.)

3. COSTS.

When a final decree, giving no costs in the court below, is affirmed in this Court, and no necessity for remanding the cause exists, this Court will give to the appellee his costs in the trial court as well as his costs in this Court.  (p. 340).

Appeal from Circuit Court, Randolph County.

Bill by H. L. Frum and others against A. N. Fox and others.   Decree for plaintiffs, and defendants Margaret Fox and others appeal.

*Reversed in part.*

W. B. MAXWELL, for appellants.

JAMES A. BENT, T. S. ENGLE and J. L. WAMSLEY, for appellees.

· POFFENBARGER, JUDGE:

Margaret Fox, widow, and T. J. and James L. Fox, adult heirs at law, of A. N. Fox, deceased, ask reversal of a decree of the circuit court of Randolph county, by which a tax deed, acquired by said A. N. Fox in his life time, was set aside and annulled, at the instance of H. L. Frum and others, heirs of H. G. Frum, deceased.

Prior to his death, said H. G. Frum obtained by purchase from Lucy E. Corley, sixty-eight acres of land, part of a

two hundred acre tract, the residue of which was purchased of A. N. Fox and one Monohan. In December, 1899, the entire tract was sold by the sheriff of said county for non-payment of the taxes thereon in the name of said Corley and purchased by Nimrod Shiflett, for $23.96. Before the purchase money was paid to the sheriff, said Frum and A. N. Fox appeared at his office and some arrangement was made by which Shiflett relinquished the benefit of his purchase, and the sheriff reported and certified the land as having been sold to said Fox, who was a son-in-law of Frum.

In March, 1901, Frum died, and, in April; following, H. L. Frum, one of his sons, and a resident of Harrison county, was appointed administrator of his estate, and A. N. Fox became the surety on his bond, with the understanding that he (Fox) should, as agent of said administrator, take charge of the personal estate of the decedent and transact business and administer the estate as such agent, in the name of said administrator. On the 15th day of February, 1901, Fox applied for, and received from the clerk of the county court of Randolph county, a deed for said tract of land, and, on the 3rd day of February, 1902, said H. L. Frum and other heirs of said decedent, brought this suit to set aside said deed, and such proceedings were had that, on the 5th day of February, 1904, it was annulled as aforesaid.

The bill also prayed relief against M. F. Fitzwater, mother of the plaintiffs and widow of H. G. Frum. After the death of her husband, she had married ———— Fitzwater. The prayer against her, based upon certain allegations of the bill, which need not be mentioned, was that her dower be adjudged and decreed in this cause to be barred.

H. L. Frum sued in his own right and as administrator, and the bill set out his relation to A. N. Fox, as agent as aforesaid, but did not pray any settlement with Fox or decree against him otherwise than for the cancellation of said deed. It did allege the duty of Fox, in view of such agency and custody of the personal estate, to pay the taxes and redeem the land from sale.

Fox answered the bill, denying all fraud in the procurement of the deed and averring notice to the heirs of his purchase and right to take the deed. Soon after the filing of this answer, he died and the suit was revived against his ad-

ministratrix, widow and heirs. The appellants answered the bill by adopting, as their own, the answer filed by A. N. Fox.

M. F. Fitzwater appeared and demurred to the bill and the court sustained the demurrer and dismissed it as to her. Afterwards, she set up a claim under the exemption statute to $200.00 worth of the personal property of the estate of H. G. Frum, as his widow, claiming the right to hold the same exempt from debts and liabilities, contracted by the decedent in his lifetime. This claim she assigned to Sarah J. Smith, who brought a suit in chancery for the enforcement of it against the administratrix and distributees of the estate of A. N. Fox. She also conveyed her claim for dower in the real estate to F. W. Smith, who brought a suit against the widow and heirs of A. N. Fox for assignment of said dower.

The court made one decree in all three cases, overruling demurrers to all the bills, setting aside said tax deed, referring all three causes to a commissioner of the court to take, state and report an account, granting leave to the parties to file answers before the commissioner and reserving, for future adjudication, all questions concerning the claim of Mary F. Fitzwater to have dower in the land and to share in the distribution of the personal estate.

In the petition for this appeal multifariousness in the bill was relied upon, but, in the brief filed for appellants, that ground of error is expressly waived. The court is requested to disregard it and pass upon the setting aside of the tax deed as if the cause were here on a sufficient bill for that purpose alone. Counsel for appellee say the bill is not multifarious in any respect. In view of this attitude of the parties, no inquiry as to the sufficiency of the bill in that respect will be entered upon.

But one competent witness testifies concerning the transaction between Frum and Fox, in consequence of which the sale was reported as having been made to the latter. That witness is Shiflett, who says Frum and Fox came to him on the day after he made the purchase and all went together to the sheriff's office where the arrangement was consummated. Upon application to the sheriff to redeem Frum was informed that he could not do so, but that, if Shiflett would yield his rights, he would give him a receipt for the land, and that

Frum gave Fox ten or eleven dollars, and Fox transacted the business with the sheriff, and that both of them talked to the sheriff about redeeming the land, and told him, (witness), they had come for the purpose of redeeming it. He further says that after retiring from the sheriff's office they said they had redeemed the land and asked the witness how he had happened to buy it. On cross-examination, he said "It was the understanding that day between me and them and George Leonard that I give away to Fox and let him take my place."

As the entire tract of two hundred acres, of which Frum owned only sixty-eight acres, and Fox and Monohan the residue, in relative quantities not disclosed, was purchased, it is clear that Frum gave Fox an amount of money amply sufficient to pay his portion of the purchase money. He owned less than one-third of the land and the whole amount of purchase money was a few cents less than twenty-four dollars, so that Frum's share of it was less than ten dollars, the lowest amount mentioned by the witness as having been given by him to Fox. In view of this circumstance, the relationship of the parties and the declarations made by them on the occasion of this transaction, we are of the opinion that there was no intention on the part of either Frum or Fox that a deed should ever be taken by the latter, and that they intended the payment of the money to operate as a redemption of the land from sale and delinquency, and that the court properly held that Fox had fraudulently and wrongfully procured the execution of the tax deed. The deed recites a sale of the entire two hundred acres, including Fox's own land, as well as that of Frum and Monohan. At the time the deed was made, all except the sixty-eight acres had been redeemed. Hence, Fox must have redeemed from himself his own land and allowed Monohan to redeem his. The Monohan interest may have afforded some reason for treating the transaction as a purchase, as to his land, but no reason is perceived why it should have been so regarded in so far as it effected the lands of Frum and Fox, since Fox was to pay the taxes on his own portion of the land and Frum had furnished him an amount amply sufficient to pay the taxes on the sixty-eight acres. As no provision of the statute authorized the sheriff to allow a redemption of part of the two hundred acre

tract, by payment of part of the taxes thereon, it was necessary to take an assignment of Shiflett's purchase, in order to have the highest and best remedy against Monohan for the taxes on his part of the land. Neither Frum nor Fox could redeem part of the land at the sheriff's office. The sheriff had no authority to release the state's security for any of the taxes. *Smith* v. *Tharp*, 17 W. Va. 221. But, after purchase, redemption of part could be allowed by the purchaser to Monohan, if he desired to redeem, and, if not, his land could be held under the purchase, since there was no tenancy in common or other confidential relation. Be this as it may, the situation in which these parties found themselves at the sheriff's office, respecting this land, makes it highly probable, if not certain, that there was no intention to effect a purchase otherwise than in trust, except as to the land owned by Monohan. As to Frum's land and his own, Fox's purchase from Shiflett was intended to operate as payment of the taxes, and, as to Monohan's, as a purchase, and it was never contemplated that Fox should take a deed for his own or Frum's land. Frum had a deed from Corley, fully describing his land and affording the means of a simple, easy redemption without any expense, and no money was due from him. Had Monohan failed to redeem, a deed for his land alone could have been taken, just as in the case of Frum's. It is not intended here to say an owner of part of a tract of land, sold as this one was, has a right to redeem his part by payment of part of the taxes or purchase money, but only that he may do so with the consent of the purchaser, and that such consent may be in the form of an antecedent agreement, contemporaneous with the purchase. Viewing the case in the light of all the circumstances and the testimony above quoted, our conclusion is that the purchase was intended to operate as a redemption as regards the land in question. A purchase by an agent is said to so operate. *Williamson* v. *Russell*, 18 W. Va. 612, 625; *Curtis* v. *Boreland*, 35 W. Va. 124; *Batton* v. *Wood*, 27 W. Va. 58; *State* v. *Eddy*, 41 W. Va. 95; Cooley on Taxation, 964; Blackwell, Tax Titles § 566. Whether it does or makes the purchaser a trustee for the owner is ordinarily not very material, since the result is practically the same. *Cain* v. *Brown*, 54 W. Va. 656, 664. This decree cancelled the tax deed, and

thus left Frum's deed from Corley in force, and thereby put the title back in Frum's heirs as effectually as if a conveyance to them by Fox's heirs had been enforced.

Failure of the court to require repayment of the purchase money and expenses, as a condition precedent to the anullment of the deed, is assigned as error, but as no purchase money is due and the expenses were incurred without necessity and in violation of the agreement of the parties, the court did not err in this respect. This is not the ordinary case of an adverse purchase under defective proceedings. In substance and effect, it was a valid purchase to hold in trust, which the courts say amounts to a redemption, and a trustee is certainly not entitled to expenses incurred in the violation of his trust, and in no sense connected with the performance or execution thereof.

The dismissal of the bill as to M. F. Fitzwater is made the subject of a cross-assignment of error by counsel for the appellees, it being insisted that the two objects disclosed by the bill, cancellation of the tax deed, and barring the dower right, were not inconsistent. They are undoubtedly wholly foreign to each other. The tax deed stood in the way of the claim of the widow as well as that of the heirs. Against it, they made common cause, for, in order to obtain any title or interest in the land, they must get rid of it. This made an issue between the widow and heirs, on one side, against Fox, on the other, involving pleadings and evidence which had no relation whatever to the claim to dower. The issue between the widow and heirs respecting the dower is wholly different, and with that Fox has nothing to do. When the matter demanded against one defendant is separate, distinct and unconnected with the matter demanded against another, and neither is interested in the defense to be made by the other, the bill asserting such different demands is multifarious. *Stuart* v. *Coulter*, 4 Rand. 74. Two distinct grounds of equitable relief between the same parties cannot be joined in one bill. *Zell Guano Co.* v. *Heatherly*, 38 W. Va. 409; see also *Shaffer* v. *Fetty*, 30 W. Va. 248; *Crickard* v. *Crouse's Admr.*, 41 W. Va. 503; *Petty* v. *Fogle*, 16 W. Va. 497.

As the matters of the settlements of the estates of Frum and Fox, decedents, are not germane to this bill, so as to make them properly cognizable in this suit, and, if they

were, the pleadings in the cause show that the sole object of the suit is to get rid of the tax deed, no decree of reference could properly be made in this cause. Whether such decree is necessary or proper in either of the other two causes can not now be determined for there is no final decree, as yet, in either of them and this appeal has not brought either of them up. The allegations of the bill, all considered, show clearly that the matters of administration, personal estate and agency in Fox were set forth for the purpose of showing duty on his part to redeem the land from his own purchase at the tax sale. For this purpose, they were not necessary, and probably not sufficient, though we do not so decide.

For the reasons above stated, so much of the decrees aforesaid as dismisses the bill as to M. F. Fitzwater and sets aside and annulls said tax deed will be affirmed, and a decree entered here, requiring the appellants to pay to the appellees their costs in the circuit court by them expended in and about the prosecution of this suit in respect to matters cognizable in it, as well as their costs in this Court, and, in all other respects, the decree of February 5, 1904, in so far as it effects this cause, will be reversed; all of which will be certified to said circuit court.

*Reversed in part.*