# CHARLESTON

SIERS *v.* WISEMAN.

Submitted September 12, 1905.  Decided November 21, 1905.

1,  ESTOPPEL IN PAIS.

> One who, assuming to act for another in respect to his property, performs an act necessarily detrimental to himself and beneficial to such other person, and not such in its nature as, under the law, can confer any right upon himself, is estopped from denying that, in performing such service, he acted for and on behalf of such other person.  (p. 346.)

2.  TAXATION---*Payment of Taxes by Volunteer,*

> Payment of taxes on land by one who has no color or claim of

right to do so on his own ·behalf, inures to the benefit of the owner, if he elects to claim it.  (p. 346.)

3.  PRINCIPAL AND AGENT---*Agency---Evidence.*

Agency may be established in favor of the principal by the admissions of the agent, or by proof of acts of the alleged agent, from which no inference, other than that of the relationship of principal and agent, can be consistently deduced.  (p. 346).

4.  PRINCIPAL AND AGENT---*Agency---Evidence.*

Agency of one person for the purpose of paying taxes on the land of another is sufficiently shown by proof of his having paid the taxes on the land for a long period of time, without any claim of title or right in or to it in himself, allowed it to become delinquent for one year, purchased at the sale for such delinquency, failed to take a deed under such purchase, continued to pay taxes on the land in the name of the owner for another long period of time and until his death, and failed to take possession thereof at any time.  (p. 347.)

5.  TAXATION---*Tax Deed to Agent.*

A deed taken by the heirs of such agent, after his death, under the purchase so made, vests no title in them as against the person for whom the taxes were so paid.  (p. 351.)

6.  TAXATION---*Payment of Taxes.*

If, in such case, the heirs of the agent take a deed under the tax purchase, and cause the land to be entered upon the land books for taxation in their own names, and to be dropped from said books in the name of the true owner, payment of the taxes on the land, as so entered and charged, will inure to the benefit of the true owner and prevent forfeiture of his title to the state under section 39 of chapter 31 of the Code of 1899, for failure to keep his land charged with taxes.  (p. 351.)

7.  TAXATION---*Suit to Cancel Tax Deed---Laches.*

An adverse claim of title under such tax deed for less than nine years before suit brought to cancel it, but without notice thereof, and possession under such deed and claim for less than three years before the institution of such suit, do not subject the plaintiffs to the bar of *laches.*  (p. 351.)

8.  TAX DEED--- *Cancellation---Reimbursement of Purchaser.*

One who seeks cancellation of a tax deed must do equity by reimbursing the purchaser for his outlay in payment of taxes and proper charges.  (p, 352.)

Appeal from Circuit Court, Fayette County.·

Bill by Amanda D. Siers and others against W. A. Wiseman and others.   Decree for plaintiffs, anddefendants appeal.

*Reversed.*

Rehearing denied January 9, 1906.

DILLON & NUCKOLLS, PAYNE & HAMILTON, and ST. CLAIR, WALKER & SUMMERFIELD, for appellants.

A. N. CAMPBELL, for appellees.

POFFENBARGER, JUDGE:

The decree appealed from in this cause dismissed two bills relating to a tract of land in Fayette county, containing fifty acres. The first suit was brought by Amanda D. Siers and others against W. A. Wiseman, administrator and heir at law of Amos K. Wiseman, and other heirs of said A. K. Wiseman, for the purpose of setting aside a deed made by the clerk of the county court of said county to the heirs of said A. K. Wiseman, on two grounds, the first of which was invalidity of said deed on its face, and the second, alleged relationship on the part of the said decedent which precluded his making, as to the complainants, a valid purchase of said land. The deed was made on the 5th day of April, 1891, under a purchase at a tax sale made in December, 1879. By reason of the long lapse of time, the clerk had no authority, under the law, to make said deed. The land had been conveyed to Amanda D. Siers, whose name was then Amanda D. Burgess, and her children by deed dated October 15, 1859. Thereafter for about four years she resided on the land. On leaving it in 1862, her uncle, A. K. Wiseman, paid the taxes until 1878, for which year it was returned delinquent for non-payment of taxes, and sold in 1879 as aforesaid; but the purchaser took no deed. In 1890 he died, having paid all the taxes on the land until the date of his death, in the name of Amanda D. Burgess. For the year 1891, the land was taxed in the name of said Burgess, but, after that year, it was kept on the land books in the name of the widow and heirs of A. K. Wiseman, and the taxes thereon paid by them. After the year 1891, the land did not appear on the land books in the name of Amanda Burgess.

Immediately after the death of A. K. Wiseman, Mrs. Siers wrote a letter to William A. Wiseman, one of the heirs of said decedent, concerning the land and the taxes thereon, to which he replied as follows, under date of July 27, 1890: "Well in regard to your land it has been sold by the sheriff twice and bought in by Father but is still taxed in your

name I cannot tell the exact amount against the land without going up to Mothers but I think it is about ($40.00) forty Dollars if you want me to give you the exact amount write back immediately and I will go and examine the papers and get the amount." Under date of March 13, 1895, he wrote her again, saying, "In reply to your letter of the third of December; in regard to that piece of land would say that it is in such a fix at this time that it would take twenty years to straighten out if the heirs are contrary which some of them are. We have been paying taxes on the place for the last thirty years and it has been sold by the State twice and father bought it in both times and at last we had to take a deed for it from the state to protect ourselves I do not exactly know what we have spent on the land but would suppose some three to four hundred Dollars I come down to Charleston some times but am most always busy I will come and see you sometime if I can." On December 27, 1896, he wrote again in reply to a letter from Mrs. Siers, repeating what he had said in former letters about the payment of taxes, sale and purchase and the taking of the deed and saying further "you can see just what condition the land is in the heirs are scattered from Missouri to Va., and I have nothing more to do with it than one of the other heirs you can readily see that the land would not pay if sold what it has cost the heirs since the war (say for thirty-five years) I am very sorry for you would help you if I could but times are very dull here and I cannot get money enough to keep my bills paid at maturity." On March 23, 1897, he wrote as follows: "I suppose you think it quite a while about me coming down but I cannot leave home just when I want too When the weather gets a little better I will get all the papers together in the case and come down and spend a day or so and see what we can do I have been talking with the heirs and I think that I probably can do something with them." A statement of agreed facts filed in the case shows that, in April, 1897, the month following that of the date of said last letter, the Wiseman heirs took possession of the tract of land. Prior to that time it had not been in the actual possession of any one, since Mrs. Siers left it in 1862. This suit was brought August 3, 1899.

The other suit was brought by the commissioner of school

lands of said county to sell the land as forfeited for non-entry on the land books for taxation, on the theory that the Wiseman heirs had no title and that the title of Mrs. Siers was forfeited, under section 39 of chapter 31 of the Code of 1899, which makes it the duty of the owner of land to keep it taxed in his name and forfeits it to the state for failure to have the same taxed for a period of five successive years.

Mrs. Siers and S. L. Walker, who claimed as grantee of her and of J. M. Richards, who had previously purchased the interests of the children of Mrs. Siers, were made defendants to said suit brought by the commissioner of school lands, and answered the bill, denying the forfeiture, but claiming the right to redeem in case the court should determine that there had been such forfeiture. After said suit was brought, the bill in the other one was amended so as to set forth the proceedings in the suit brought on behalf of the state, and a prayer added for leave to pay into court the amount of taxes and interest necessary to redeem the land, as ascertained by the commissioner to whom the suit brought on behalf of the state had been referred for that purpose.

For superiority of title, the defendants rely upon section 3 of Article XIII of the Constitution, by which the title to land forfeited is, under certain conditions, transferred to and vested in any person (other than those for whose default the same may have been forfeited or returned delinquent, their heirs or devisees), for so much of said land as such person shall have had claim to, and actual, continuous possession of, under color of title for any five successive years after the year 1865, and have paid all taxes charged or chargeable thereon for said period. They do not rely upon the tax deed as a valid deed passing title, but they rely upon it as color of title and say that, at the time the decree was pronounced in these causes, they had had possession under said deed for the period of five years and had paid all taxes charged and chargeable thereon. They took possession in April, 1897, and the decree in these causes was made on the 16th day of October, 1903. They had not had five years' possession at the time of the institution of either of these suits, but they insist that the commencement of these suits did not stop the running

of time under this constitutional provision, and that, upon the completion of said period of possession, the title of the plaintiffs, having been forfeited and taken up by the state, under section 39 of chapter 31 of the Code, was transferred to, and vested in, them, by force of this constitutional provision.

The question of agency on the part of A. K. Wiseman is of controlling importance. If, from the year 1862, until the time of his death, he was the agent of the owners for the purpose of paying taxes on the land, his purchase inured to their benefit and if a purchaser, he was a trustee, holding the legal title, while the equitable title remained in the owners, and his heirs took no greater or other estate than he held, and their entry upon the land under the deed, founded upon the purchase of their ancestor, was likewise for the benefit of the owners.

It is asserted in the brief that the answers deny everything alleged except that the defendants are the heirs of said A. K. Wiseman, that the deed under which they claim was executed by the clerk of the county court, and that the land had been conveyed to A. D. Burgess and to her children; but this is not strictly accurate. Neither of the answers denies payment of the taxes by A. K. Wiseman while they were charged in the name of A. D. Burgess, but they do deny that the payments were made for her benefit. They do not deny the fact of payment, but only the legal effect thereof. The answer to the original bill denies "that the said A. K. Wiseman *as such agent* did continue in charge of the said premises and did pay the taxes thereon *for the said plaintiff* until the time of his death which occurred in the year 18—." The answer to the amended bill says the allegation of payment of taxes is false and untrue "so far as it states that A. K. Wiseman in his lifetime paid any taxes or that W. A. Wiseman since his death paid any taxes *that in any way could inure to the benefit of the plaintiffs or any of them.*" These answers further deny that A. D. Burgess or any of the defendants or any person under whom they or any of them claim, paid any taxes on the land. But all this falls short of denying that A. K. Wiseman paid the taxes while they were charged in the name of A. D. Burgess. On the whole, the denial is carefully and expressly qualified so as

not to extend to payment only by the appellees and their ancestor. Neither is the genuineness of the letters of W. A. Wiseman, copies of which are exhibited with the bill, denied. Nor is the correctness of the dates of the purchase and deed denied.

In paying these taxes from 1863 up to 1878, a period of fifteen years, A. K. Wiseman undoubtedly acted for A. D. Burgess and her children. The land was theirs and the taxes were charged in her name. No person on earth had the right to pay them except the owners. No person on earth could pay them without assuming to act for her, and it is well settled that where one person assumes to act and does act on behalf of another, he is estopped to deny the benefit of that act to such other person, and to claim the benefit thereof for himself as against such other person. *Schedda* v. *Sawyer*, 4 McClean (U. S.) 181, holds that a person who assumes to act as agent in redeeming land sold for taxes, is held to have acted in that capacity; and if he so take advantage of such act as to obtain a title in his own name, he is responsible in the character assumed and will be held to answer to those in whom the title was vested. In the opinion the court said: "It is argued that the bill does not charge an agency in redeeming the land from the tax sale. The bill declares that he represented himself as agent for complainants. Unless he acted in that capacity, having no interest in the land, he had no right to redeem it. He is not only alleged in the bill to have acted as agent, but the act itself shows that he so acted." "Where a person assumes to act as agent for another, it will be presumed as against him that the relation existed, *so as to cast upon him the burden of proving that it did not exist*, if he afterwards takes such position." Clark & Skyles on Agency, section 63. In treating of evidence and proof of agency, as shown by the acts of the agent, Mechem on Agency, at section 100, says: "His acts and statements cannot be made use of against the principal until the fact of the agency has been shown by other evidence. His statements and admissions would, however, in any proper case be admissible against himself." This principle was applied in *Knupp* v. *Syms*, 200 Pa. 489. Hodges claimed the land by purchase at a tax sale, and an old journal of the treasurer was produced, showing that Hodges had

paid the taxes on the land from 1842 to 1849, and in 1849 had paid to the treasurer the taxes for the year for the delinquency of which the land had been sold and purchased by him. Upon this evidence alone, the court determined that he was the agent of the owner and disqualified to take the benefit of delinquency by purchase. Proof of payment of the taxes made a *prima facie* case of agency which was not rebutted or overthrown in any manner. *Gamble* v. *Hamilton*, 31 Fla. 401, was a case similar to this in many respects. There was no evidence of prior agency on the part of Branch, the testator of the plaintiff, who claimed under a tax deed, but it did appear that he had previously paid taxes for the owner, the amount of which, however, had been repaid to him. Soon after this transaction, the land became delinquent, was sold and Branch purchased it and, under that purchase, he claimed title. After the purchase, he wrote the owner, in response to an inquiry about the land, saying he had purchased, but that it was all right and should not prejudice. Afterwards, there were negotiations between the parties looking to a sale of the land to Branch, but none was ever consummated. In the meantime, he had taken a tax deed under his purchase made in 1875, without the knowledge of the owner. Under these circumstances, the court held that his purchase was a fraud upon the owner, and that whatever title he took under the purchase inured to the owner's benefit.

But, for delinquency for the year 1878, Wiseman purchased the land in 1879. If nothing else appeared, this act would not necessarily be deemed an act on behalf, and for the benefit, of the owners. It was an act which any stranger might have done on his own behalf. It may be said here that payment of the taxes in the name of the owner for the preceding fifteen years, though inconsistent with any other view than that of agency, as regards payment for those years, is not evidence of agency, binding Wiseman to pay taxes for future years, or disabling him from purchasing for delinquency, for subsequent years. This position may be sound. But he took no deed under that purchase and continued to pay the taxes for the years 1879 to 1889, inclusive, and his heirs or his administrator paid for the years 1890 and 1891, in the name of Amanda D. Burgess. After the expi-

ration of five years from the date of the purchase there was no authority in the clerk·to execute, nor right in Wiseman to demand, a deed under that purchase. Acts of 1872-73, chapter 117, section 24; Acts 1882, chapter 130, section 24; Code, chapter 31, section 24. This Wiseman knew, yet he neglected to take a deed and continued to pay the taxes in the name of the owner, all of which is inconsistent with intent on his part to act for himself and not for the owners of the land. His conduct is irreconcilable with any theory other than that of intention to act for their benefit.

It was not necessary that there be an express formal appointment to create the relationship of principal and agent, nor that there be direct evidence of appointment of the agent, or of a contract of agency. It may sufficiently appear from circumstances and the conduct of the parties. If it be shown that one person continues to act for another and his action is acquiesced in by such other, the relationship or contract of agency is sufficiently sustained by evidence. "An agency may be created by express words or acts of the principal, or may be implied from his conduct and acquiescence. The nature and extent of an agency may be implied and inferred from the circumstances." *Ruffner* v. *Hewitt*, 7 W. Va. 585. In that case, the agency was established against the principal by implication arising from conduct shown. Here the question is the kind and quantum of evidence, sufficient to establish the contract or relation against the agent and in favor of the principal, and, for that purpose, evidence of admissions and conduct of the agent is freely allowed everywhere. A person cannot, by his testimony and acts alone prove his agency against his principal, nor can strangers do so, but it is universally admitted that he may thus prove it against himself and in favor of his principal.

To the application of this principle it may be objected that the evidence falls short of showing, on the part of the owners, knowledge of the acts of Wiseman or recognition thereof. If this position be conceded, the principal of estoppel applies. Wiseman's heirs claim under, and are bound by, his acts. They do not pretend to have title otherwise than by inheritance from him. They claim and have such

right and title as he had and no more. In the attempt to repudiate his acts, clearly done for the benefit of Mrs. Siers and her children, they are met with the assertion, on the part of the owners, of a claim to the benefit of what was done for them. But is it apparent that the evidence is insufficient to afford a foundation for the finding as a matter· of fact that Wiseman's acts in reference to this land were unknown, unrecognized and unacquiesced in by the owners? Owners of property subject to taxation, as all private property is, are presumed to know that the taxes accrue thereon annually and that non-payment thereof results in loss of the property. No great distance intervened between the residence of Mrs. Siers and the location of the land and she and Wiseman were close relatives. It is highly probable, to say the least, that she did know of his payments and acquiesced therein, for he continued to make them, and strong probabilities arising from admitted facts are everywhere held to have weight and force as evidence. It is sometimes asserted by the courts that owners of property will not be allowed to plead ignorance of. the status and condition thereof or of the vicissitudes to which it is subject. *Broderick's Will.* 21 Wall. 519; *Lafferty* v. *Lafferty*, 42 W. Va. 783. If they cannot absolve themselves from duty on the ground of such ignorance, will it be presumed, in order to defeat a right or title which must exist but for it?

So far as the competent evidence discloses, no money was ever furnished Wiseman with which to pay the taxes and he was never re-imbursed for payments made by him. But is the contrary to be assumed? For aught that appears in the evidence, or admissions by the pleadings, some money may have been furnished to him for that purpose. He is dead and Mrs. Siers not permitted to testify. Does not the fact of payment of the taxes for fifteen years argue that there may have been some money furnished for that purpose? But suppose none was furnished and the payments, in view of the relation of the parties, should be deemed to have been gratuitous, is that fact inconsistent with the position that the payments were made for the benefit of the owners? By no means. The motive which prompted the payment is immaterial, for there was no right in Wiseman to pay the taxes or in any way interfere with the property except on behalf, and for

the benefit, of the owners, and neither he nor his heirs can be permitted to claim the benefit of such acts against the owner. He may have expected or intended to claim a lien upon the land for the amount of his expenditures, and having the power to do so, by taking the title in his own name, was willing to advance the money and charge it to the owners. This is not at all inconsistent with the relation of agency, nor with the existence of a perfect equitable title to the land in Mrs. Siers and her children. Failure to supply an agent with money for payment of taxes does not absolve him from duty to abstain from buying the land. *Bowman* v. *Officer & Pusey*, 53 Ia. 640. It may be said, however, that under this principle, every tortious act which a stranger may do upon the land of another or with reference to it, will operate beneficially to the owner, if he sees fit to claim the benefit of it, and is, therefore, inconsistent with the principles of the law of adverse possession. Adverse possession is exceptional in its nature and principles, being founded upon the statute of limitations, and can only be predicated upon acts of such nature as are hostile, so openly and notoriously hostile, as to be inconsistent with any admission of right or title in any other person. Mere payment of taxes is not such an act. Title by adverse possession rests not upon common law principles, but upon the statute of limitations, which professedly, and for reasons of public policy, gives the party the benefit of his own wrong in defiance of common law justice and right. Ordinarily, the owner of property may found a right upon any tortious act of a stranger, respecting it. If beneficial, he may claim the whole of the benefit, and, if injurious, he may waive the tort, adopt the act and sue upon it, as upon a contract. But the whole course of the conduct of A. K. Wiseman in its nature and effect is detrimental to himself and beneficial to the owners, necessarily and unequivocally so, and nothing to the contrary can be inferred from it.

Counsel for the appellees relies upon the case of *Day* v. *Fay*, decided March 28, 1905, and quotes at some length from the opinion therein; but it differs from this in material respects. The deed was taken as soon after the purchase as the law would permit, and the purchase itself was not made until after the death of the alleged principal. From what has

been said here, the importance of these circumstances must be apparent.

Having concluded that agency in Wiseman is sufficiently shown, it follows that his heirs succeeded to only such right and title as he had. Their payment of taxes on the land in their own name from 1892 down to the present time inured to the benefit of the Siers title and there has been no forfeiture of that title to the state. They held in privity with the Siers title, and; in such case, no other payment on the land is required. Double payment is required only in the case of hostile titles. *Sturm* v. *Fleming*, 26 W. Va. 54. The claim of forfeiture is predicated solely upon failure to keep the land on the land books and cause the same to be taxed as the property of Mrs. Siers and her children and those who claim under them. As the Wiseman heirs held the Siers title, if at all, in trust, having the legal title only, while the equitable title remained in the adverse parties, the payment of taxes in their names inures to the benefit of the appellants and prevents forfeiture under the statute, and as there has been no forfeiture of that title to the state, there could have been no transfer of it under, and by force of, Section 3 of Article XIII of the Constitution. Forfeiture is a condition essential to such a transfer. It never can occur without a contemporaneous, or precedent, forfeiture. *State* v. *Harman*, 57 W. Va. 447.

Agency on the part of the ancestor of the appellees renders it equally unnecessary to say whether the deed executed by the clerk is good or bad. Though it were absolutely free from defect, the appellees would hold the title under it as trustees for the appellants. *Batton* v. *Wood*, 27 W. Va. 58; *Williamson* v. *Russell*, 18 W. Va. 612; *Curtis* v. *Boreland*, 35 W. Va. 124; *State* v. *Eddy*, 41 W. Va. 95. Upon showing their equitable title, they may demand conveyance of the legal title, and, in this view, the better it is the clearer their right to it, for, if it operates to strengthen the title of the *cestuis qui trustent*, they are entitled to the benefit of such additional strength.

*Laches* is relied upon as a defense, but the lapse of time from the date of notice of the adverse claim is too short. The appellees took possession of the land in April, 1897. This suit was commenced August 3, 1899, less than three years

after notice of intent to deny the claim of the appellants. As late as March, 1897, W. A. Wiseman, the only one of the heirs who had communication with Mrs. Siers, so far as the bill discloses, promised in writing to call upon her and see what could be done. Within five years preceding that date, he had written her three letters, in response to inquiries about the land, and failed to give notice of an adverse claim, except for the purpose of securing the money due the estate, in any of them. He did tell her they had taken a deed *to protect* themselves, but in immediate connection with that statement he mentioned the money due them. He further said some of the heirs were contrary, but in what respect he did not indicate, and, in the last letter, he said he thought he could probably do something with them. This necessarily imported belief on his part in the possibility of an adjustment with her and acquiescence in her demand. His failure to disclose the amount of taxes paid, and intimation that it was large and more than the value of the land might have excited suspicion, but he continued to assure her of his intention to come and see her, and evidently about the land, for, in his final letter, he apologized for his long delay and promised to get "all the papers together in the case and come down and spend a day or so." This correspondence began immediately after the death of the ancestor and several months before the acquisition of the tax deed, the first act signifying hostility, but not communicated for four years and then with the assurance that it had been taken for protection as above stated. There is a dead witness, it is true, but if he were living, he would be estopped to deny the legal force and effect of admitted and incontrovertible facts and his testimony, if consistent with them, would overthrow, rather than sustain, the position of claimants under him, in a controversy which they have brought on since his death. Under these circumstances, no such lack of diligence is perceived as amounts to *laches*. Less than nine years intervened between the date of the deed and the institution of this suit, and delay for that period, even if long enough to be prejudicial, is sufficiently excused.

Though entitled to the land, the appellants must do equity by re-imbursing the estate of A. K. Wiseman and the appellees to the extent of their respective payments, on account of

taxes on the land, together with costs and expenses properly incurred. *Morris* v. *Roseberry*, 46 W. Va. 24, 29; *Button* v. *McClain*, 50 W. Va. 121.

As the state had no title by forfeiture, its bill should have been dismissed, but without an adjudication in its favor, and, as the appellants had the equitable title to the land, the tax deed should have been set aside and annulled on re-imbursement as aforesaid, as to the taxes paid.

Therefore, these causes will be remanded to the circuit court of Fayette county, with direction to ascertain the amount due the estate of A. K. Wiseman and his heirs for taxes paid on the land, with interest thereon, and other proper charges, and then to enter a decree in conformity with the conclusions above expressed.

*Reversed.*